[Civil No. 2724.   Filed January 14, 1929.]

[273 Pac. 725.]

DANIEL GONZALES, Appellant, v. JOSEPH VARGO and MRS. JOSEPH VARGO, Appellees.

Messrs. Anderson & Gale and Mr. Leo T. Stack, for Appellant.

Mr. Louis H. Bunte, for Appellees.

LOCKWOOD, C. J.—Defendant's counsel in their reply brief have characterized this case as presenting an "extraordinary situation," and we agree with

them. The facts appear from the record to be as follows: Joseph Vargo and wife, hereinafter called plaintiffs, obtained judgments against one Rodriguez, in two separate actions, in the sum of $2,000 and $1,000 respectively. Two writs of general execution were taken out thereon, and the sheriff levied on a certain Studebaker automobile. Shortly after the levy one Daniel Gonzales, hereinafter called defendant, made claim to the automobile under the provisions of paragraphs 1648–1672, Revised Statutes of Arizona of 1913, Civil Code, executed the statutory bond, and took possession of the automobile, placing it in a certain garage in Jerome. An issue was framed under the paragraphs cited, between plaintiffs and defendant, which was docketed in the superior court of Yavapai county as the present case. The court some time thereafter found that defendant had failed to establish his right to the automobile, and on May 26, 1927, rendered judgment against him, in conformity with the statute for the value of the property fixed at $1,000, together with ten per cent damages and costs, the entire judgment amounting to some $1,127. On the fifth day of July plaintiffs issued execution on this judgment, and levied on certain real estate belonging to defendant, situated in Jerome, which real estate on August 4th was duly sold, according to law, to plaintiffs as execution creditors for the sum of $1,161.85, the sheriff's certificate of sale was issued, and the execution returned as satisfied.

In the meantime, and on the sixth day of July, plaintiffs again issued execution on the original judgments against Rodriguez, and relevied on the automobile, the same being sold thereafter, for the sum of $500, to plaintiffs as execution creditors, and such execution was returned as satisfied to that extent. Thereafter defendant moved to set aside the judgment rendered against him on the twenty-sixth day of May, and the execution and sale thereunder,

alleging that the automobile in question, at the time it was taken by virtue of the execution issued on the Rodriguez judgments on the sixth day of July, 1927, "was in the same condition and of equal value as at the time of the first levy thereon," and that defendant had never taken possession of it, but had at all times left it in a certain garage, "subject to the determination of said claim and the further disposition of said sheriff or his successor." Defendant further set up the sale of his real estate under execution in his case, and alleged that by reason of the two writs and the sales aforesaid he had been subjected to a double penalty and compelled to respond under both of two alternative and disjunctive conditions of his bond.

Plaintiffs answered the motion, demurring thereto, and alleging that defendant, after giving his bond in the original proceedings as aforesaid, took possession of the automobile and used it, and permitted other persons to use it; that at the time of the last levy the automobile was not of the same condition or equal value as at the time of the first levy, and had depreciated in value from the time that it was first levied upon; and further that defendant had wholly failed to comply with the provisions of paragraph 1670 of the code, and that by reason thereof the money judgment against him became absolute. The court, considering the motion, demurrer, and answer thereto, denied the motion, whereupon defendant appealed from the order so denying.

It is the contention of defendant that, under the statute regulating trial of the right of possession to property above referred to, when a claimant fails to establish his right to the property a judgment is rendered against him in the alternative, either for the return of the property, together with the damages and costs, or for the payment of a money judgment; and that plaintiffs, by again seizing the property as

they did in this case, have waived the money judgment and elected to take the property, and are therefore estopped from proceeding any further on the money judgment. It is the position of plaintiffs that under the statute defendant is given ten days' time in which to make an election between two alternatives, but that, in case he fails to "return such property in as good condition as he received it, and pay for the use of the same, together with the damages and costs" within ten days, as a matter of law the judgment becomes absolute, and there is no further right of election; that so far as a waiver is concerned, even if such can be made, it must appear that plaintiffs have accepted the alternative in full, that is, that they have received the property in as good condition as it was, together with damages and pay for the use of the same, and that, since the court denied the motion to set aside the judgment on pleadings which raised such issue of fact, it must be construed as a finding that the automobile was not in the condition it was when originally taken, and that defendant had not paid or tendered the damages or compensation for its use as provided by statute.

The situation is indeed "extraordinary." If defendant's theory of the law is correct, plaintiffs will be compelled to accept an automobile which sold for $500 in full satisfaction of a judgment for over $1,100. Further, Rodriguez will only obtain credit on the judgment against him for $500, when property of his originally worth $1,000 was seized, and all this as a result of defendant's unfounded claim to the car. On the other hand, if plaintiffs' position is sound, they will have recovered altogether, as a result of a levy on property admittedly never worth over $1,000 over $1,600, and Rodriguez will have credited on his indebtedness only $500.

The trial of the right of personal property in cases like this is governed by statute, and the judgment to be rendered and proceedings after judgment are described in paragraphs 1667–1670, Revised Statutes of Arizona of 1913, Civil Code, which read as follows:

"1667.  In all cases where any claimant of property under the provisions of this chapter, shall fail to establish his right thereto, judgment shall be rendered against him and his sureties for the value of the property, with legal interest thereon from the date of such bond and for ten per cent. damages.

"1668.  When such value is greater than the amount claimed under the writ, by virtue of which such property was levied upon, the damages shall be on the amount claimed under such writ.

"1669.  On such judgment no execution shall issue for ten days.

"1670.  If within ten days from the rendition of such judgment the claimant shall return such property in as good condition as he received it, and pay for the use of the same, together with the damages and costs, such delivery and payment shall operate as a satisfaction of such judgment."

Counsel have cited to us only three cases wherein the situation was anything like that in the case at bar.  The first two of these are from the state of Georgia: *Barnes* v. *Vandiver,* 5 Ga. App. 162, 62 S. E. 994; *Redwine Bros.* v. *Street,* 18 Ga. App. 77, 89 S. E. 163.  These cases arose out of the same state of facts, and the opinion in the latter case reaffirms the rule laid down in the former, and is based upon the same line of reasoning.  In the Barnes case the court said:

"The plaintiff had a forthcoming bond, and he had a right to rely upon it, to the exclusion of any other remedy or agreement; but, having placed his lien in the hands of the sheriff and demanded the proceeds of a sale, he will not be heard to say that that sale was illegal; and if it was a legal and valid sale, under the judgment of a court of competent jurisdiction

*which prevented the production of the property according to the terms of the forthcoming bond,* the nonproduction of the property under these circumstances was excused." (Italics ours.)

It seems that in these cases, if plaintiffs had not proceeded as they did, defendants would have had a legal right to satisfy the condition of their bonds by returning the property, and the vital point, apparently, is that, since the plaintiffs by their levy of execution and sale *prevented the production of the property according to the terms of the bond,* they cannot now be heard to insist upon its enforcement. In *Floyd* v. *Cook,* 118 Ga. 526, 63 L. R. A. 450, 45 S. E. 441, the rule is laid down:

"The law controls the rights and remedies of every person, and *when it interferes and prevents an obligor from complying with the conditions of a bond,* the obligor should not be held liable because of his noncompliance. The interference of the law is analogous to an act of God operating to prevent compliance." (Italics ours.)

The case of *Willis* v. *Chowning,* (Tex. Civ. App.) 38 S. W. 1141; Id., 90 Tex. 617, 59 Am. St. Rep. 842, 40 S. W. 395, Id., 18 Tex. Civ. App. 625, 46 S. W. 45, comes from the state of Texas. The statute which we have under consideration was undoubtedly taken from Texas, and the decisions from that state, if in point, are necessarily extremely persuasive, if not controlling. While in that case the court held that a recovery could not be had upon the bond, it appears from the facts therein that the property taken was, as a matter of law, returned within the ten days allowed by statute. Of course, on such a state of facts, the statute expressly says that the judgment on the bond is satisfied. We think the cases cited lay down the correct rules of law to apply to the facts therein, but the difference in the facts in the present case makes those rules inapplicable. It appears that, long before

these plaintiffs took any action towards the second levy on, and sale of the automobile, the time given by statute wherein defendant might have returned the property and paid the damages had expired, without his making any effort to do so. Defendant, therefore, by his own failure or neglect, and not by the act of the plaintiffs or of the law, was prevented from satisfying the first condition of the bond, and, under such circumstances, that law at the end of the ten days automatically made the election that the money judgment should stand. While it may be that plaintiffs might *waive* their judgment thereafter, no subsequent act either by them or by defendant could be an *election*, that having already been made as a matter of law, and the money judgment is therefore the only valid one. So far as a waiver is concerned, the whole conduct of plaintiffs shows that none such was intended. They took out execution on the money judgment *before* they did anything regarding the automobile. They did not attempt to seize it under any process against *defendant*, but considered it necessary to sue out a new execution against Rodriguez, and to sell under that. Such conduct is inconsistent with the idea of a waiver.

It is contended, however, that it is contrary to all principles of equity and justice that defendant should be penalized over $1,100 for claiming property which in the long run was returned to plaintiffs, and of which they obtained the proceeds. This is undoubtedly true, but to our minds it is equally unjust that plaintiffs should recover only $500 actual value and be deprived by the unwarranted claim of defendant of the $500 extra, which the automobile was worth when it was originally taken in execution, to say nothing of their damages and costs incurred through defendant's action.

The spirit and intent of the statute is undoubtedly that, when the claimant fails to establish his claim, he must make good to the plaintiff the value of the property *at the time of its seizure,* plus damages. He may do this either by returning the property in ten days in equally good condition, and paying damages, or by paying the full amount of the judgment in cash. A failure so to return within the statutory time is an election by him to stand on the cash judgment. When plaintiffs collect their cash judgment, since its basis is that they were legally entitled to seize the property in question and apply its proceeds on the judgment against the original debtor, they should give credit to that debtor for the assessed value of the property represented in the judgment against defendant, and, if, thereafter, through another levy, they receive the proceeds of the property, in justice and equity they should credit these net proceeds on the judgment against defendant. We think the subsequent sale of the automobile was neither an election nor a waiver, but equitably a payment of the net proceeds thereof on the judgment against defendant.

If, therefore, plaintiffs shall, within sixty days from the date of this opinion, pay into the hands of the clerk of the superior court of Yavapai county for the credit of defendant whatever net sum was received by them from the sale of the said automobile, and shall credit on their judgments against Rodriguez the sum of $1,000, less any amount they may have heretofore credited on the last-named judgments from the sale of said automobile, the order of the superior court appealed from will be affirmed; otherwise it will be reversed and remanded, with instructions to grant defendant's motion, each party to bear his own costs.

McALISTER and ROSS, JJ., concur.